# LITEKY ET AL. *v.* UNITED STATES

No. 92–6921.  Argued November 3, 1993—Decided March 7, 1994

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, THOMAS, and GINSBURG, JJ., joined. KENNEDY, J., filed an opinion concurring in the judgment, in which BLACKMUN, STEVENS, and SOUTER, JJ., joined, *post*, p. 557.

*Peter Thompson,* by appointment of the Court, 509 U. S. 920, argued the cause and filed briefs for petitioners.

*Thomas G. Hungar* argued the cause for the United States. With him on the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney, Deputy Solicitor General Bryson,* and *Joel M. Gershowitz.*

JUSTICE SCALIA delivered the opinion of the Court.

Section 455(a) of Title 28 of the United States Code requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This case presents the question whether required recusal under this provision is subject to the limitation that has come to be known as the "extrajudicial source" doctrine.

## I

In the 1991 trial at issue here, petitioners were charged with willful destruction of property of the United States in violation of 18 U. S. C. § 1361. The indictment alleged that they had committed acts of vandalism, including the spilling of human blood on walls and various objects, at the Fort Benning Military Reservation. Before trial petitioners moved to disqualify the District Judge pursuant to 28 U. S. C. § 455(a). The motion relied on events that had occurred during and immediately after an earlier trial, involving petitioner Bourgeois, before the same District Judge.

In the 1983 bench trial, Bourgeois, a Catholic priest of the Maryknoll order, had been tried and convicted of various misdemeanors committed during a protest action, also on the federal enclave of Fort Benning. Petitioners claimed that recusal was required in the present case because the judge had displayed "impatience, disregard for the defense and animosity" toward Bourgeois, Bourgeois' codefendants, and their beliefs. The alleged evidence of that included the following words and acts by the judge: stating at the outset of the trial that its purpose was to try a criminal case and not to provide a political forum; observing after Bourgeois' opening statement (which described the purpose of his protest) that the statement ought to have been directed toward the anticipated evidentiary showing; limiting defense counsel's cross-examination; questioning witnesses; periodically cautioning defense counsel to confine his questions to issues material to trial; similarly admonishing witnesses to keep answers responsive to actual questions directed to material issues; admonishing Bourgeois that closing argument was not a time for "making a speech" in a "political forum"; and giving Bourgeois what petitioners considered to be an excessive sentence. The final asserted ground for disqualification—and the one that counsel for petitioners described at oral argument as the most serious—was the judge's interruption of the closing argument of one of Bourgeois' codefendants,

instructing him to cease the introduction of new facts, and to restrict himself to discussion of evidence already presented.

The District Judge denied petitioners' disqualification motion, stating that matters arising from judicial proceedings were not a proper basis for recusal. At the outset of the trial, Bourgeois' counsel informed the judge that he intended to focus his defense on the political motivation for petitioners' actions, which was to protest United States Government involvement in El Salvador. The judge said that he would allow petitioners to state their political purposes in opening argument and to testify about them as well, but that he would not allow long speeches or discussions concerning Government policy. When, in the course of opening argument, Bourgeois' counsel began to explain the circumstances surrounding certain events in El Salvador, the prosecutor objected, and the judge stated that he would not allow discussion about events in El Salvador. He then instructed defense counsel to limit his remarks to what he expected the evidence to show. At the close of the prosecution's case, Bourgeois renewed his disqualification motion, adding as grounds for it the District Judge's "admonishing [him] in front of the jury" regarding the opening statement, and the District Judge's unspecified "admonishing [of] others," in particular Bourgeois' two *pro se* codefendants. The motion was again denied. Petitioners were convicted of the offense charged.

Petitioners appealed, claiming that the District Judge violated 28 U. S. C. § 455(a) in refusing to recuse himself. The Eleventh Circuit affirmed the convictions, agreeing with the District Court that "matters arising out of the course of judicial proceedings are not a proper basis for recusal." 973 F. 2d 910 (1992). We granted certiorari. 508 U. S. 939 (1993).

## II

Required judicial recusal for bias did not exist in England at the time of Blackstone. 3 W. Blackstone, Commentaries

*361. Since 1792, federal statutes have compelled district judges to recuse themselves when they have an interest in the suit, or have been counsel to a party. See Act of May 8, 1792, ch. 36, § 11, 1 Stat. 278. In 1821, the basis of recusal was expanded to include all judicial relationship or connection with a party that would in the judge's opinion make it improper to sit. Act of Mar. 3, 1821, ch. 51, 3 Stat. 643. Not until 1911, however, was a provision enacted requiring district-judge recusal for bias *in general.* In its current form, codified at 28 U. S. C. § 144, that provision reads as follows:

> "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
> "The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

Under § 144 and its predecessor, there came to be generally applied in the courts of appeals a doctrine, more standard in its formulation than clear in its application, requiring—to take its classic formulation found in an oft-cited opinion by Justice Douglas for this Court—that "[t]he alleged bias and prejudice to be disqualifying [under § 144] must stem from an extrajudicial source." *United States* v. *Grinnell Corp.,* 384 U. S. 563, 583 (1966). We say that the doctrine was less than entirely clear in its application for

several reasons. First, *Grinnell* (the only opinion of ours to recite the doctrine) clearly meant by "extrajudicial source" a source outside the judicial proceeding at hand—which would include as extrajudicial sources earlier judicial proceedings conducted by the same judge (as are at issue here).[1] Yet many, perhaps most, Courts of Appeals considered knowledge (and the resulting attitudes) that a judge properly acquired in an earlier proceeding *not* to be "extrajudicial." See, *e. g.,* *Lyons* v. *United States,* 325 F. 2d 370, 376 (CA9), cert. denied, 377 U. S. 969 (1964); *Craven* v. *United States,* 22 F. 2d 605, 607–608 (CA1 1927). Secondly, the doctrine was often quoted as justifying the refusal to consider trial *rulings* as the basis for § 144 recusal. See, *e. g.,* *Toth* v. *Trans World Airlines, Inc.,* 862 F. 2d 1381, 1387–1388 (CA9 1988); *Liberty Lobby, Inc.* v. *Dow Jones & Co.,* 838 F. 2d 1287, 1301 (CADC), cert. denied, 488 U. S. 825 (1988). But trial *rulings* have a judicial *expression* rather than a judicial *source.* They may well be based upon extrajudicial knowledge or motives. Cf. *In re International Business Machines Corp.,* 618 F. 2d 923, 928, n. 6 (CA2 1980). And finally, even in cases in which the "source" of the bias or prejudice was clearly the proceedings themselves (for example, testimony introduced or an event occurring at trial which produced unsuppressible judicial animosity), the supposed doctrine would not necessarily be applied. See, *e. g.,* *Davis* v. *Board of School Comm'rs of Mobile County,* 517 F. 2d 1044, 1051 (CA5 1975) (doctrine has "pervasive bias" exception), cert. denied, 425 U. S. 944 (1976);

---

[1] That is clear when the language from *Grinnell* excerpted above is expanded to include its entire context: "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *Berger* v. *United States,* 255 U. S. 22, 31. Any adverse attitudes that [the district judge in the present case] evinced toward the defendants were based on his study of the depositions and briefs which the parties had requested him to make." 384 U. S., at 583. The cited case, *Berger,* had found recusal required on the basis of judicial remarks made in an earlier proceeding.

*Rice* v. *McKenzie,* 581 F. 2d 1114, 1118 (CA4 1978) (doctrine "has always had limitations").

Whatever the precise contours of the "extrajudicial source" doctrine (a subject to which we will revert shortly), it is the contention of petitioners that the doctrine has no application to §455(a). Most Courts of Appeals to consider the matter have rejected this contention, see *United States* v. *Barry,* 961 F. 2d 260, 263 (CADC 1992); *United States* v. *Sammons,* 918 F. 2d 592, 599 (CA6 1990); *McWhorter* v. *Birmingham,* 906 F. 2d 674, 678 (CA11 1990); *United States* v. *Mitchell,* 886 F. 2d 667, 671 (CA4 1989); *United States* v. *Merkt,* 794 F. 2d 950, 960 (CA5 1986), cert. denied, 480 U. S. 946 (1987); *Johnson* v. *Trueblood,* 629 F. 2d 287, 290–291 (CA3 1980), cert. denied, 450 U. S. 999 (1981); *United States* v. *Sibla,* 624 F. 2d 864, 869 (CA9 1980). Some, however, have agreed with it, see *United States* v. *Chantal,* 902 F. 2d 1018, 1023–1024 (CA1 1990); cf. *United States* v. *Coven,* 662 F. 2d 162, 168–169 (CA2 1981) (semble), cert. denied, 456 U. S. 916 (1982). To understand the arguments pro and con it is necessary to appreciate the major changes in prior law effected by the revision of §455 in 1974.

Before 1974, §455 was nothing more than the then-current version of the 1821 prohibition against a judge's presiding who has an interest in the case or a relationship to a party. It read, quite simply:

> "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein." 28 U. S. C. §455 (1970 ed.).

The 1974 revision made massive changes, so that §455 now reads as follows:

"(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

"(b) He shall also disqualify himself in the following circumstances:

"(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

"(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

"(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

"(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

"(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

"(ii) Is acting as a lawyer in the proceeding;

"(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

"(iv) Is to the judge's knowledge likely to be a material witness in the proceeding."

548

Almost all of the revision (paragraphs (b)(2) through (b)(5)) merely rendered objective and spelled out in detail the "interest" and "relationship" grounds of recusal that had previously been covered by § 455. But the other two paragraphs of the revision brought into § 455 elements of general "bias and prejudice" recusal that had previously been addressed only by § 144. Specifically, paragraph (b)(1) entirely duplicated the grounds of recusal set forth in § 144 ("bias or prejudice"), but (1) made them applicable to *all* justices, judges, and magistrates (and not just district judges), and (2) placed the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recusal only in response to a party affidavit.

Subsection (a), the provision at issue here, was an entirely new "catchall" recusal provision, covering both "interest or relationship" and "bias or prejudice" grounds, see *Liljeberg* v. *Health Services Acquisition Corp.*, 486 U. S. 847 (1988)— but requiring them *all* to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was required whenever "impartiality might reasonably be questioned."

What effect these changes had upon the "extrajudicial source" doctrine—whether they in effect render it obsolete, of continuing relevance only to § 144, which seems to be properly invocable only when § 455(a) can be invoked anyway— depends upon what the basis for that doctrine was. Petitioners suggest that it consisted of the limitation of § 144 to *"personal* bias or prejudice," bias or prejudice officially acquired being different from "personal" bias or prejudice. And, petitioners point out, while § 455(b)(1) retains the phrase "personal bias or prejudice," § 455(a) proscribes all partiality, not merely the "personal" sort.

It is true that a number of Courts of Appeals have relied upon the word "personal" in restricting § 144 to extrajudicial sources, see, *e. g., Craven* v. *United States*, 22 F. 2d 605, 607–

608 (CA1 1927); *Ferrari* v. *United States,* 169 F. 2d 353, 355 (CA9 1948). And several cases have cited the absence of that word as a reason for excluding that restriction from § 455(a), see *United States* v. *Coven, supra,* at 168, cert. denied, 456 U. S. 916 (1982); *Panzardi-Alvarez* v. *United States,* 879 F. 2d 975, 983–984, and n. 6 (CA1), cert. denied, 493 U. S. 1082 (1989). It seems to us, however, that that mistakes the basis for the "extrajudicial source" doctrine. Petitioners' suggestion that we relied upon the word "personal" in our *Grinnell* opinion is simply in error. The only reason *Grinnell* gave for its "extrajudicial source" holding was citation of our opinion almost half a century earlier in *Berger* v. *United States,* 255 U. S. 22 (1921). But that case, and the case which it in turn cited, *Ex parte American Steel Barrel Co.,* 230 U. S. 35 (1913), relied not upon the word "personal" in § 144, but upon its provision requiring the recusal affidavit to be filed 10 days before the beginning of the court term. That requirement was the reason we found it obvious in *Berger* that the affidavit "must be based upon facts antedating the trial, not those occurring during the trial," 255 U. S., at 34; and the reason we said in *American Steel Barrel* that the recusal statute "was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, . . . but to prevent his future action in the pending cause," 230 U. S., at 44.

In our view, the proper (though unexpressed) rationale for *Grinnell,* and the basis of the modern "extrajudicial source" doctrine, is not the statutory term "personal"—for several reasons. First and foremost, that explanation is simply not the semantic success it pretends to be. Bias and prejudice seem to us not divided into the "personal" kind, which is offensive, and the official kind, which is perfectly all right. As generally used, these are pejorative terms, describing dispositions that are *never* appropriate. It is common to speak of "personal bias" or "personal prejudice" without meaning the adjective to do anything except emphasize the

idiosyncratic nature of bias and prejudice, and certainly without implying that there is some other "nonpersonal," benign category of those mental states. In a similar vein, one speaks of an individual's "personal preference," without implying that he could also have a "nonpersonal preference." Secondly, interpreting the term "personal" to create a complete dichotomy between court-acquired and extrinsically acquired bias produces results so intolerable as to be absurd. Imagine, for example, a lengthy trial in which the presiding judge for the first time learns of an obscure religious sect, and acquires a passionate hatred for all its adherents. This would be "official" rather than "personal" bias, and would provide no basis for the judge's recusing himself.

It seems to us that the origin of the "extrajudicial source" doctrine, and the key to understanding its flexible scope (or the so-called "exceptions" to it), is simply the pejorative connotation of the words "bias or prejudice." Not *all* unfavorable disposition towards an individual (or his case) is properly described by those terms. One would not say, for example, that world opinion is biased or prejudiced against Adolf Hitler. The words connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess (for example, a criminal juror who has been biased or prejudiced by receipt of inadmissible evidence concerning the defendant's prior criminal activities), or because it is excessive in degree (for example, a criminal juror who is so inflamed by properly admitted evidence of a defendant's prior criminal activities that he will vote guilty regardless of the facts). The "extrajudicial source" doctrine is one application of this pejorativeness requirement to the terms "bias" and "prejudice" as they are used in §§ 144 and 455(b)(1) with specific reference to the work of judges.

The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defend-

ant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J. P. Linahan, Inc.*, 138 F. 2d 650, 654 (CA2 1943). Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

It is wrong in theory, though it may not be too far off the mark as a practical matter, to suggest, as many opinions have, that "extrajudicial source" is the *only* basis for establishing disqualifying bias or prejudice. It is the only *common* basis, but not the exclusive one, since it is not the *exclusive* reason a predisposition can be wrongful or inappropriate. A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment. (That explains what some courts have called the "pervasive bias" exception to the "extrajudicial source" doctrine. See, *e. g., Davis* v. *Board of School Comm'rs of Mobile County*, 517 F. 2d 1044, 1051 (CA5 1975), cert. denied, 425 U. S. 944 (1976).)

With this understanding of the "extrajudicial source" limitation in §§ 144 and 455(b)(1), we turn to the question whether it appears in § 455(a) as well. Petitioners' argument for the negative based upon the mere absence of the

word "personal" is, for the reasons described above, not persuasive. Petitioners also rely upon the categorical nature of § 455's language: Recusal is required *whenever* there exists a genuine question concerning a judge's impartiality, and not merely when the question arises from an extrajudicial source. A similar "plain-language" argument could be made, however, with regard to §§ 144 and 455(b)(1): They apply *whenever* bias or prejudice exists, and not merely when it derives from an extrajudicial source. As we have described, the latter argument is invalid because the pejorative connotation of the terms "bias" and "prejudice" demands that they be applied only to judicial predispositions that go beyond what is normal and acceptable. We think there is an equivalent pejorative connotation, with equivalent consequences, to the term "partiality." See American Heritage Dictionary 1319 (3d ed. 1992) ("partiality" defined as "[f]avorable prejudice or bias"). A prospective juror in an insurance-claim case may be stricken as partial if he always votes for insurance companies; but not if he always votes for the party whom the terms of the contract support. "Partiality" does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate. Impartiality is not gullibility. Moreover, even if the pejorative connotation of "partiality" were not enough to import the "extrajudicial source" doctrine into § 455(a), the "reasonableness" limitation (recusal is required only if the judge's impartiality "might *reasonably* be questioned") would have the same effect. To demand the sort of "child-like innocence" that elimination of the "extrajudicial source" limitation would require is not reasonable.

Declining to find in the language of § 455(a) a limitation which (petitioners acknowledge) *is* contained in the language of § 455(b)(1) would cause the statute, in a significant sense, to contradict itself. As we have described, § 455(a) expands the protection of § 455(b), but duplicates some of its protection as well—not only with regard to bias and prejudice but also with regard to interest and relationship. Within the

area of overlap, it is unreasonable to interpret § 455(a) (unless the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b). It would obviously be wrong, for example, to hold that "impartiality could reasonably be questioned" simply because one of the parties is in the fourth degree of relationship to the judge. Section 455(b)(5), which addresses the matter of relationship specifically, ends the disability at the *third* degree of relationship, and that should obviously govern for purposes of § 455(a) as well. Similarly, § 455(b)(1), which addresses the matter of personal bias and prejudice specifically, contains the "extrajudicial source" limitation—and *that* limitation (since nothing in the text contradicts it) should govern for purposes of § 455(a) as well.[2]

---

[2] JUSTICE KENNEDY asserts that what we have said in this paragraph contradicts the proposition, established in *Liljeberg* v. *Health Services Acquisition Corp.*, 486 U. S. 847 (1988), that "subsections (a) and (b), while addressing many of the same underlying circumstances, are autonomous in operation." *Post*, at 566. *Liljeberg* established no such thing. It established that subsection (a) requires recusal in some circumstances where subsection (b) does not—but that is something quite different from "autonomy," which in the context in which JUSTICE KENNEDY uses it means that the one subsection is to be interpreted and applied without reference to the other.

It is correct that subsection (a) has a "broader reach" than subsection (b), *post*, at 567, but the provisions obviously have some ground in common as well, and should not be applied inconsistently there. *Liljeberg* concerned a respect in which subsection (a) *did* go beyond (b). Since subsection (a) deals with the *objective appearance* of partiality, any limitations contained in (b) that consist of a subjective-knowledge requirement are obviously inapplicable. Subsection (a) also goes beyond (b) in another important respect: It covers *all* aspects of partiality, and not merely those specifically addressed in subsection (b). However, when one of those aspects addressed in (b) *is* at issue, it is poor statutory construction to interpret (a) as nullifying the limitations (b) provides, except to the extent the text requires. Thus, as we have said, under subsection (a) as under (b)(5), fourth degree of kinship will not do.

What is at issue in the present case *is* an aspect of "partiality" already addressed in (b), personal bias or prejudice. The "objective appearance" principle of subsection (a) makes irrelevant the subjective limitation of

Petitioners suggest that applying the "extrajudicial source" limitation to § 455(a) will cause disqualification of a trial judge to be more easily obtainable upon remand of a case by an appellate court than upon direct motion. We do not see why that necessarily follows; and if it does, why it is necessarily bad. Federal appellate courts' ability to assign a case to a different judge on remand rests not on the recusal statutes alone, but on the appellate courts' statutory power to "require such further proceedings to be had as may be just under the circumstances," 28 U. S. C. § 2106. That may permit a different standard, and there may be pragmatic reasons for a different standard. We do not say so—but merely say that the standards applied on remand are irrelevant to the question before us here.

For all these reasons, we think that the "extrajudicial source" doctrine, as we have described it, applies to § 455(a). As we have described it, however, there is not much doctrine to the doctrine. The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for "bias or prejudice" recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be

---

(b)(1): The judge does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so. But nothing in subsection (a) eliminates the longstanding limitation of (b)(1), that "personal bias or prejudice" does not consist of a disposition that fails to satisfy the "extrajudicial source" doctrine. The objective appearance of an adverse disposition attributable to information acquired in a prior trial is not an objective appearance of personal bias or prejudice, and hence not an objective appearance of improper partiality.

better to speak of the existence of a significant (and often determinative) "extrajudicial source" *factor*, than of an "extrajudicial source" *doctrine*, in recusal jurisprudence.

The facts of the present case do not require us to describe the consequences of that factor in complete detail. It is enough for present purposes to say the following: First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See *United States* v. *Grinnell Corp.*, 384 U. S., at 583. In and of themselves (*i. e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger* v. *United States*, 255 U. S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoy-

ance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

## III

Applying the principles we have discussed to the facts of the present case is not difficult. None of the grounds petitioners assert required disqualification. As we have described, petitioners' first recusal motion was based on rulings made, and statements uttered, by the District Judge during and after the 1983 trial; and petitioner Bourgeois' second recusal motion was founded on the judge's admonishment of Bourgeois' counsel and codefendants. In their briefs here, petitioners have referred to additional manifestations of alleged bias in the District Judge's conduct of the trial below, including the questions he put to certain witnesses, his alleged "anti-defendant tone," his cutting off of testimony said to be relevant to defendants' state of mind, and his post-trial refusal to allow petitioners to appeal *in forma pauperis*.[3]

All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

The judgment of the Court of Appeals is

*Affirmed.*

---

[3] Petitioners' brief also complains of the District Judge's refusal in the 1983 trial to call petitioner Bourgeois "Father," asserting that this "subtly manifested animosity toward Father Bourgeois." Brief for Petitioners 30. As we have discussed, when intrajudicial behavior is at issue, manifestations of animosity must be much more than subtle to establish bias.

JUSTICE KENNEDY, with whom JUSTICE BLACKMUN, JUSTICE STEVENS, and JUSTICE SOUTER join, concurring in the judgment.

The Court's ultimate holding that petitioners did not assert sufficient grounds to disqualify the District Judge is unexceptionable. Nevertheless, I confine my concurrence to the judgment, for the Court's opinion announces a mistaken, unfortunate precedent in two respects. First, it accords nearly dispositive weight to the source of a judge's alleged partiality, to the point of stating that disqualification for intrajudicial partiality is not required unless it would make a fair hearing impossible. Second, the Court weakens the principal disqualification statute in the federal system, 28. U. S. C. § 455, by holding—contrary to our most recent interpretation of the statute in *Liljeberg* v. *Health Services Acquisition Corp.*, 486 U. S. 847 (1988)—that the broad protections afforded by subsection (a) are qualified by limitations explicit in the specific prohibitions of subsection (b).

I

We took this case to decide whether the reach of § 455(a) is limited by the so-called extrajudicial source rule. I agree with the Court insofar as it recognizes that there is no *per se* rule requiring that the alleged partiality arise from an extrajudicial source. In my view, however, the Court places undue emphasis upon the source of the challenged mindset in determining whether disqualification is mandated by § 455(a).

A

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." For present purposes, it should suffice to say that § 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a

judge's rulings or findings. I think all would agree that a high threshold is required to satisfy this standard. Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.

The statute does not refer to the source of the disqualifying partiality. And placing too much emphasis upon whether the source is extrajudicial or intrajudicial distracts from the central inquiry. One of the very objects of law is the impartiality of its judges in fact and appearance. So in one sense it could be said that any disqualifying state of mind must originate from a source outside law itself. That metaphysical inquiry, however, is beside the point. The relevant consideration under § 455(a) is the appearance of partiality, see *Liljeberg, supra,* at 860, not where it originated or how it was disclosed. If, for instance, a judge presiding over a retrial should state, based upon facts adduced and opinions formed during the original cause, an intent to ensure that one side or the other shall prevail, there can be little doubt that he or she must recuse. Cf. *Rugenstein* v. *Ottenheimer,* 78 Ore. 371, 372, 152 P. 215, 216 (1915) (reversing for judge's failure to disqualify himself on retrial, where judge had stated: " 'This case may be tried again, and it will be tried before me. I will see to that. And I will see that the woman gets another verdict and judgment that will stand' ").

I agree, then, with the Court's rejection of the *per se* rule applied by the Court of Appeals, which provides that "matters arising out of the course of judicial proceedings are not a proper basis for recusal" under § 455(a). 973 F. 2d 910 (CA11 1992). But the Court proceeds to discern in the statute an extrajudicial source interpretive doctrine, under which the source of an alleged deep-seated predisposition is a primary factor in the analysis. The Court's candid struggle to find a persuasive rationale for this approach demonstrates that prior attempts along those lines have fallen

somewhat short of the mark. This, I submit, is due to the fact that the doctrine crept into the jurisprudence more by accident than design.

The term "extrajudicial source," though not the interpretive doctrine bearing its name, has appeared in only one of our previous cases: *United States* v. *Grinnell Corp.*, 384 U. S. 563 (1966). Respondents in *Grinnell* alleged that the trial judge had a personal bias against them, and sought his disqualification and a new trial under 28 U. S. C. § 144. That statute, like § 455(b)(1), requires disqualification for "bias or prejudice." In denying respondents' claim, the Court stated that "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." 384 U. S., at 583.

Although *Grinnell*'s articulation of the extrajudicial source rule has a categorical aspect about it, the decision, on closer examination, proves not to erect a *per se* barrier. After reciting what appeared to be an absolute rule, the Court proceeded to make a few additional points: that certain in-court statements by the judge "reflected no more than his view that, if the facts were as the Government alleged, stringent relief was called for"; that during the trial the judge "repeatedly stated that he had not made up his mind on the merits"; and that another of the judge's challenged statements did not "manifes[t] a closed mind on the merits of the case," but rather was "a terse way" of reiterating a prior ruling. *Ibid.* Had we meant the extrajudicial source doctrine to be dispositive under § 144, those further remarks would have been unnecessary.

More to the point, *Grinnell* provides little justification for its announcement of the extrajudicial source rule, relying only upon a citation to *Berger* v. *United States*, 255 U. S. 22, 31 (1921). The cited passage from *Berger*, it turns out, does not bear the weight *Grinnell* places on it, but stands for the more limited proposition that the alleged bias "must be

based upon something other than rulings in the case." 255 U. S., at 31. *Berger*, in turn, relies upon an earlier case advancing the same narrow proposition, *Ex parte American Steel Barrel Co.*, 230 U. S. 35, 44 (1913) (predecessor of § 144 "was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise"). There is a real difference, of course, between a rule providing that bias must arise from an extrajudicial source and one providing that judicial rulings alone cannot sustain a challenge for bias. *Grinnell*, therefore, provides a less than satisfactory rationale for reading the extrajudicial source doctrine into § 144 or the disqualification statutes at issue here. It should come as little surprise, then, that the Court does not enlist *Grinnell* to support its adoption of the doctrine.

The Court adverts to, but does not ratify, *ante*, at 549, an alternative rationale: the requirement in § 144 that a litigant's recusal affidavit "be filed not less than 10 days before the beginning of the term at which the proceeding is to be heard," unless "good cause [is] shown for failure to file it within such time." If a litigant seeking disqualification must file an affidavit 10 days before the beginning of the term, the argument goes, the alleged bias cannot arise from events occurring or facts adduced during the litigation. See *Berger, supra*, at 34–35. That rationale fails as well. The 10-day rule has been an anachronism since 1963, when Congress abolished formal terms of court for United States district courts. See 28 U. S. C. § 138. In any event, the rule always had an exception for good cause. And even if the 10-day requirement could justify reading the extrajudicial source rule into § 144, it would not suffice as to § 455(a) or § 455(b)(1), which have no analogous requirement.

The Court is correct to reject yet another view, which has gained currency in several Courts of Appeals, that the term "personal" in §§ 144 and 455(b)(1) provides a textual home for the extrajudicial source doctrine. *Ante*, at 548–550.

Given the flaws with prior attempts to justify the doctrine, the Court advances a new rationale: The doctrine arises from the pejorative connotation of the term "bias or prejudice" in §§ 144 and 455(b)(1) and the converse of the term "impartiality" in § 455(a). *Ante*, at 550, 552–553. This rationale, as the Court acknowledges, does not amount to much. It is beyond dispute that challenged opinions or predispositions arising from outside the courtroom need not be disqualifying. See, *e. g.*, *United States* v. *Conforte*, 624 F. 2d 869, 878–881 (CA9), cert. denied, 449 U. S. 1012 (1980). Likewise, prejudiced opinions based upon matters disclosed at trial may rise to the level where recusal is required. See, *e. g.*, *United States* v. *Holland*, 655 F. 2d 44 (CA5 1981); *Nicodemus* v. *Chrysler Corp.*, 596 F. 2d 152, 155–157, and n. 10 (CA6 1979). From this, the Court is correct to conclude that an allegation concerning some extrajudicial matter is neither a necessary nor a sufficient condition for disqualification under any of the recusal statutes. *Ante*, at 554–555. The Court nonetheless proceeds, without much explanation, to find "a significant (and often determinative) 'extrajudicial source' *factor*" in those statutes. *Ante*, at 555 (emphasis in original).

This last step warrants further attention. I recognize along with the Court that, as an empirical matter, doubts about a judge's impartiality seldom have merit when the challenged mindset arises as a result of some judicial proceeding. The dichotomy between extrajudicial and intrajudicial sources, then, has some slight utility; it provides a convenient shorthand to explain how courts have confronted the disqualification issue in circumstances that recur with some frequency.

To take a common example, litigants (like petitioners here) often seek disqualification based upon a judge's prior participation, in a judicial capacity, in some related litigation. Those allegations are meritless in most instances, and their prompt rejection is important so the case can proceed. Judges, if faithful to their oath, approach every aspect of

each case with a neutral and objective disposition. They understand their duty to render decisions upon a proper record and to disregard earlier judicial contacts with a case or party.

Some may argue that a judge will feel the "motivation to vindicate a prior conclusion" when confronted with a question for the second or third time, for instance, upon trial after a remand. Ratner, Disqualification of Judges for Prior Judicial Actions, 3 How. L. J. 228, 229–230 (1957). Still, we accept the notion that the "conscientious judge will, as far as possible, make himself aware of his biases of this character, and, by that very self-knowledge, nullify their effect." *In re J. P. Linahan, Inc.*, 138 F. 2d 650, 652 (CA2 1943). The acquired skill and capacity to disregard extraneous matters is one of the requisites of judicial office. As a matter of sound administration, moreover, it may be necessary and prudent to permit judges to preside over successive causes involving the same parties or issues. See Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(a) ("The original motion shall be presented promptly to the judge of the district court who presided at the movant's trial and sentenced him, or, if the judge who imposed sentence was not the trial judge, then it shall go to the judge who was in charge of that part of the proceedings being attacked by the movant"). The public character of the prior and present proceedings tends to reinforce the resolve of the judge to weigh with care the propriety of his or her decision to hear the case.

Out of this reconciliation of principle and practice comes the recognition that a judge's prior judicial experience and contacts need not, and often do not, give rise to reasonable questions concerning impartiality.

## B

There is no justification, however, for a strict rule dismissing allegations of intrajudicial partiality, or the appearance

thereof, in every case. A judge may find it difficult to put aside views formed during some earlier proceeding. In that instance we would expect the judge to heed the judicial oath and step down, but that does not always occur. If through obduracy, honest mistake, or simple inability to attain self-knowledge the judge fails to acknowledge a disqualifying predisposition or circumstance, an appellate court must order recusal no matter what the source. As I noted above, the central inquiry under § 455(a) is the appearance of partiality, not its place of origin.

I must part, then, from the Court's adoption of a standard that places all but dispositive weight upon the source of the alleged disqualification. The Court holds that opinions arising during the course of judicial proceedings require disqualification under § 455(a) only if they "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Ante*, at 555. That standard is not a fair interpretation of the statute, and is quite insufficient to serve and protect the integrity of the courts. In practical effect, the Court's standard will be difficult to distinguish from a *per se* extrajudicial source rule, the very result the Court professes to reject.

The Court's "impossibility of fair judgment" test bears little resemblance to the objective standard Congress adopted in § 455(a): whether a judge's "impartiality might reasonably be questioned." The statutory standard, which the Court preserves for allegations of an extrajudicial nature, asks whether there is an appearance of partiality. See *Liljeberg*, 486 U. S., at 860 ("[t]he goal of section 455(a) is to avoid even the appearance of partiality") (internal quotation marks omitted); *United States* v. *Chantal*, 902 F. 2d 1018, 1023 (CA1 1990). The Court's standard, in contrast, asks whether fair judgment is impossible, and if this test demands some direct inquiry to the judge's actual, rather than apparent, state of mind, it defeats the underlying goal of § 455(a): to avoid the appearance of partiality even when no partiality exists.

And in all events, the "impossibility of fair judgment" standard remains troubling due to its limited, almost preclusive character. As I interpret it, a § 455(a) challenge would fail even if it were shown that an unfair hearing were likely, for it could be argued that a fair hearing would be possible nonetheless. The integrity of the courts, as well as the interests of the parties and the public, are ill served by this rule. There are bound to be circumstances where a judge's demeanor or attitude would raise reasonable questions concerning impartiality but would not devolve to the point where one would think fair judgment impossible.

When the prevailing standard of conduct imposed by the law for many of society's enterprises is reasonableness, it seems most inappropriate to say that a judge is subject to disqualification only if concerns about his or her predisposed state of mind, or other improper connections to the case, make a fair hearing impossible. That is too lenient a test when the integrity of the judicial system is at stake. Disputes arousing deep passions often come to the courtroom, and justice may appear imperfect to parties and their supporters disappointed by the outcome. This we cannot change. We can, however, enforce society's legitimate expectation that judges maintain, in fact and appearance, the conviction and discipline to resolve those disputes with detachment and impartiality.

The standard that ought to be adopted for all allegations of an apparent fixed predisposition, extrajudicial or otherwise, follows from the statute itself: Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified. Indeed, in such circumstances, I should think that any judge who understands the judicial office and oath would be the first to insist that another judge hear the case.

In matters of ethics, appearance and reality often converge as one. See *Offutt* v. *United States*, 348 U. S. 11, 14 (1954) ("[J]ustice must satisfy the appearance of justice"); *Ex parte McCarthy*, [1924] 1 K. B. 256, 259 (1923) ("[J]ustice should not only be done, but should manifestly and undoubtedly be seen to be done"). I do not see how the appearance of fairness and neutrality can obtain if the bare possibility of a fair hearing is all that the law requires. Cf. *Marshall* v. *Jerrico, Inc.*, 446 U. S. 238, 242 (1980) (noting the importance of "preserv[ing] both the appearance and reality of fairness," which " 'generat[es] the feeling, so important to a popular government, that justice has been done' ") (quoting *Joint Anti-Fascist Refugee Comm.* v. *McGrath*, 341 U. S. 123, 172 (1951) (Frankfurter, J., concurring)).

Although the source of an alleged disqualification may be relevant in determining whether there is a reasonable appearance of impartiality, that determination can be explained in a straightforward manner without resort to a nearly dispositive extrajudicial source factor. I would apply the statute as written to all charges of partiality, extrajudicial or otherwise, secure in my view that district and appellate judges possess the wisdom and good sense to distinguish substantial from insufficient allegations and that our rules, as so interpreted, are sufficient to correct the occasional departure.

## II

The Court's effort to discern an "often dispositive" extrajudicial source factor in § 455(a) leads it to an additional error along the way. As noted above, the Court begins by explaining that the pejorative connotation of the term "bias or prejudice" demonstrates that the source of an alleged bias is significant under §§ 144 and 455(b)(1). The Court goes on to state that "it is unreasonable to interpret § 455(a) (unless the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b)." *Ante*, at 553 (emphasis in original). That interpretation, the Court reasons, "would

cause the statute, in a significant sense, to contradict itself." *Ante,* at 552.

We rejected that very understanding of the interplay between §§ 455(a) and (b) in *Liljeberg* v. *Health Services Acquisition Corp.,* 486 U. S. 847 (1988). Respondent in *Liljeberg* sought to disqualify a district judge under § 455(a) because the judge (in his capacity as trustee of a university) had a financial interest in the litigation, albeit an interest of which he was unaware. Petitioner opposed disqualification, and asked us to interpret § 455(a) in light of § 455(b)(4), which provides for disqualification only if the judge "knows that he, individually or as a fiduciary, . . . has a financial interest in the subject matter in controversy or in a party to the proceeding." According to petitioner, the explicit knowledge requirement in § 455(b)(4) indicated that Congress intended a similar requirement to govern § 455(a). See *Liljeberg,* 486 U. S., at 859, n. 8. Otherwise, petitioner contended, the knowledge requirement in § 455(b)(4) would be meaningless. *Ibid.*

In holding for respondent, we emphasized that there were "important differences" between subsections (a) and (b), and concluded that the explicit knowledge requirement under § 455(b)(4) does not apply to disqualification motions filed under § 455(a). *Id.,* at 859–860, and n. 8. *Liljeberg* teaches, contrary to what the Court says today, that limitations inherent in the various provisions of § 455(b) do not, by their own force, govern § 455(a) as well. The structure of § 455 makes clear that subsections (a) and (b), while addressing many of the same underlying circumstances, are autonomous in operation. Section 455(b) commences with the charge that a judge "shall also disqualify himself in the following circumstances"; Congress' inclusion of the word "also" indicates that subsections (a) and (b) have independent force. Section 455(e), which permits parties to waive grounds for disqualification arising under § 455(a), but not § 455(b), provides further specific textual confirmation of the difference.

The principal distinction between §§ 455(a) and (b) is apparent from the face of the statute. Section 455(b) delineates specific circumstances where recusal is mandated; these include instances of actual bias as well as specific instances where actual bias is assumed. See 28 U. S. C. § 455(b)(1) ("personal bias or prejudice"); § 455(b)(2) (judge "served as [a] lawyer in the matter in controversy" while in private practice); § 455(b)(3) (same while judge served in government employment); § 455(b)(4) ("financial interest" in the litigation); § 455(b)(5) (judge "within the third degree of relationship" to a party, lawyer, or material witness). Section 455(a), in contrast, addresses the appearance of partiality, guaranteeing not only that a partisan judge will not sit, but also that no reasonable person will have that suspicion. See *Liljeberg, supra,* at 860.

Because the appearance of partiality may arise when in fact there is none, see, *e. g., Hall* v. *Small Business Admin.,* 695 F. 2d 175, 179 (CA5 1983); *United States* v. *Ritter,* 540 F. 2d 459, 464 (CA10), cert. denied, 429 U. S. 951 (1976), the reach of § 455(a) is broader than that of § 455(b). One of the distinct concerns addressed by § 455(a) is that the appearance of impartiality be assured whether or not the alleged disqualifying circumstance is also addressed under § 455(b). In this respect, the statutory scheme ought to be understood as extending § 455(a) beyond the scope of § 455(b), and not confining § 455(a) in large part, as the Court would have it. See *ante,* at 553–554, n. 2. The broader reach of § 455(a) is confirmed by the rule permitting its more comprehensive provisions, but not the absolute rules of § 455(b), to be waived. See 28 U. S. C. § 455(e). And in all events, I suspect that any attempt to demarcate an "area of overlap" (*ante,* at 553) between §§ 455(a) and (b) will prove elusive in many instances.

Given the design of the statute, then, it is wrong to impose the explicit limitations of § 455(b) upon the more extensive protections afforded by § 455(a). See *Liljeberg, supra,*

at 859–861, and n. 8. The Court's construction of the statute undercuts the protection Congress put in place when enacting §455(a) as an independent guarantee of judicial impartiality.

## III

The Court describes in all necessary detail the unimpressive allegations of partiality, and the appearance thereof, in this case. The contested rulings and comments by the trial judge were designed to ensure the orderly conduct of petitioners' trial. Nothing in those rulings or comments raises any inference of bias or partiality. I concur in the judgment.