Patricia H. PIESTER and Richard
Piester, Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORP.,
Defendants.

C.A. No. 93–0470P.

United States District Court,
D. Rhode Island.

July 1, 1996.

Mark C. Hadden, Gidley, Sarli & Marusak, Providence, RI, Robert Clark Corrente, Corrente, Brill & Kusinitz, Providence, RI, Steven J. Phillips, Moshe Maimon, Caroline Tso, Levy, Phillips & Konigsberg, New York City, Arnold C. Lakind, Szaferman, Lakind, Blumstein, Watter & Bader, Lawrenceville, NJ, for Plaintiff.

Matthew F. Medeiros, Robert Karmen, Medeiros, Karmen & Sanford, Providence, RI, Sean R. Levin, Fitzhugh & Associates, Boston, MA, Michael A. Cerussi, Jr., Joseph A. D'Avanzo, Cerussi & Spring, White Plains, NY, Jeffrey F. Richardson, East Greenwich, RI, for Defendants.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

## I. Introduction

Plaintiffs Patricia H. Piester and her husband, Richard Piester, brought this personal injury action against Defendant International Business Machines Corp. ("IBM"), seeking recovery for injuries that allegedly resulted from Mrs. Piester's workplace use of an IBM computer keyboard. The matter went to trial beginning on September 18, 1995, and the jury returned a verdict for IBM on October 20, 1995.

Both before and during the trial, many problems regarding scheduling, availability of witnesses, and presentation and admissibility of evidence arose. Following the trial, the plaintiffs filed Motions for a Mistrial and for a New Trial. In their motions, the plaintiffs claim that this Court "displayed what appeared to be an animus toward plaintiffs' cause ... exercis[ing] its discretion in such a way as to treat the parties disparately, consistently and inappropriately to the defendant's benefit and the plaintiffs [sic] disadvantage." Mem.Law Supp. Pls.' Mot. for Mistrial and for New Trial at 1–2. In the accompanying affidavit, Steven J. Phillips, the plaintiffs' lead trial counsel, sets forth the incidents and adverse rulings which allegedly support the plaintiffs' claim that this Court's approach was "fundamentally unfair." *Id.* at 2. In addition, the plaintiffs assert that a number of this Court's specific legal rulings "also independently constitute error warranting a new trial." *Id.* The issues raised by the plaintiffs in these motions were properly raised as objections during the trial.

I have scrutinized the trial transcript and reconsidered each of the rulings and incidents which the plaintiffs claim demonstrates animus towards their case. I have also examined whether, independent of the question of animus, the events of the trial demonstrate that plaintiffs were prejudiced by inconsistent or legally erroneous rulings. For the reasons discussed below, I find no merit in the plaintiffs' allegations that my rulings during and management of the trial demonstrate animus or bias which would require, or even allow, a grant of a mistrial and my recusal from the case. However, I do now grant a new trial to the plaintiffs. With the benefit of hindsight and the opportunity to look at individual rulings within the context of the entire trial, I find that, in the interest of justice, certain legal rulings I made require a new trial.

## II. Background

From April 1988 to January 1991, plaintiff Patricia Piester was employed as a data entry typist by Internists, Inc. During her employment, Mrs. Piester's primary job duties involved entering medical data into a computer, using a keyboard designed, manufactured, and sold by defendant IBM. In August 1990, Mrs. Piester began to have symptoms of pain, numbness, and other discomfort in her wrists; these symptoms were later diagnosed as carpal tunnel syndrome. The Piesters brought this action against IBM, alleging that Mrs. Piester's use of the IBM computer keyboard caused her carpal tunnel syndrome and that IBM was liable for her injuries under theories of strict products liability and negligence. The plaintiffs' strict liability claim rested on their assertion that the IBM keyboard, as it was designed, was unreasonably dangerous or, alternatively, that IBM's failure to warn Mrs. Piester of the keyboard's dangerous propensities rendered it unreasonably dangerous. In addition, the plaintiffs claimed that IBM was negligent (1) in failing to use reasonable care in designing the keyboard and (2) in failing to warn keyboard users of injuries that could result from use of the keyboard and to instruct users how to prevent such injuries. IBM vigorously contested all of these claims and vehemently denied that the IBM keyboard was a proximate cause of Mrs. Piester's injuries.

## III. Discussion

### A. Allegations of partiality

■ In the plaintiffs' Motions for a Mistrial and for a New Trial, they allege that they received an unfair trial as a result of this Court's animus toward their case. The plaintiffs assert that this Court's numerous rulings adverse to them, along with incidents demonstrating irritation and frustration with the plaintiffs' attorneys' approach to interrogating witnesses and introducing evidence, gave an "appearance of partiality" toward the defendant. In effect, the plaintiffs argue that this "appearance of partiality" was sufficient to require my disqualification under 28 U.S.C. § 455(a), which sets forth the standard for the mandatory recusal of a judge.

*See* Mem.Law Supp. Pls.' Mot. for Mistrial and for New Trial at 5–7. Clearly, if I should have recused myself, I should now grant a mistrial and recuse myself from any further proceedings in this case. After scrutinizing the transcript and considering the incidents which the plaintiffs call to my attention, however, I conclude that the plaintiffs' allegations of partiality have no merit. I consequently decline to grant a mistrial on the grounds that I should have recused myself from the case under § 455(a).

■ 28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The United States Supreme Court, however, has made clear that, except in the most extreme of circumstances demonstrating favoritism or antagonism, disqualification for partiality is subject to the "extrajudicial source" limitation. *Liteky v. United States,* 510 U.S. 540, 554, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Generally speaking, this means that determinations of bias or partiality cannot be based on opinions, rulings, or incidents arising out of the course of the proceedings in question. *Id.* As the Supreme Court explained in *Liteky,* the consequences of the "extrajudicial source" limitation are as follows:

> First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.* The Court further declared that bias or partiality is not established by evidence of "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.*

Evaluating one's own conduct is certainly one of the most difficult and exacting tasks that a judge must perform, especially in the context of allegations of partiality or bias, and especially when made for the first time in a judicial career that spans thirty years. My goal, in resolving these motions, has been to evaluate the plaintiffs' allegations of animus thoroughly and objectively and to make a conscientious determination of whether the allegations have any merit. Consequently, I have scrutinized the transcript, as well as my own memory of the events of trial and my thoughts at that time. I have concluded that no extrajudicial source of bias could have existed. If anything, my treatment of the plaintiffs, which may be argued was generally stricter than my treatment of the defendant, was the unconscious result of my frustration with the painfully slow progress of the case and with the plaintiffs' unwieldy approach to the presentation of witnesses and documentary evidence. I became irritated with the many problems and difficulties that arose, and the bickering between attorneys from both sides. I made some remarks that were perhaps inappropriate or ill-considered. None of this, however, demonstrates that my irritation with the case had any source other than the events of the proceedings themselves. As IBM properly points out, all of the allegations contained in Mr. Phillips' affidavit deal solely with issues and incidents arising from the proceedings of this case. The plaintiffs have failed to allege any extrajudicial source of partiality or animus. Moreover, the isolated remarks or rulings which the plaintiffs rely upon simply do not, in the context of the entire trial, "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky,* 510 U.S. at ——, 114 S.Ct. at 1157.

## B. Allegations of Legal Error

■ Any legal error in rulings on the admissibility of evidence, if prejudicial, is a separate, proper basis for now granting a new trial to the plaintiffs. *See Lama v. Borras,* 16 F.3d 473, 477 (1st Cir.1994) (citing 11 C. Wright & A. Miller, Federal Practice and Procedure §§ 2805–2810 (1973)). Moreover, it is within my power and duty as a district court judge to order a new trial if, in my judgment, a new trial is required "in order to prevent injustice." *Kearns v. Keystone Shipping Co.,* 863 F.2d 177, 181 (1st Cir.1988) (citing Wright & Miller § 2805). Thus, I have looked at my rulings to determine whether injustice occurred in the trial, independent of my determination, set forth above, that no bias or partiality requires a mistrial. I have now had the benefit of reading the entire trial transcript, away from the heat and pressure of trial. I have had the opportunity to reconsider, at my leisure, the legal merits of my rulings and to compare my approaches to similar problems at different points in the trial. In light of this opportunity, I now grant a new trial, based upon the two legal errors discussed below, and, more generally, in order to prevent possible injustice to the plaintiffs.

■ The first ruling I will address is my exclusion of Plaintiffs' Exhibit 137, a video which had been prepared by IBM to be shown to its own employees. The video presented IBM's corporate medical director, Dr. Glenn Haughie, and an expert on ergonomics hired by IBM, Dr. Colin Drury, discussing questions of safety using computers, specifically including use of the computer keyboard. The video contains explicit admissions by IBM of a causal relationship between use of the keyboard and repetitive stress injury to the wrists. The video further contains explicit warnings to IBM employees to keep the wrists in neutral positions while using the keyboard in order to avoid injury. When the plaintiffs proffered the video, I misunderstood the purposes for which they were offering it and its relevance to central aspects of their claims. In retrospect, I see that the admissions contained in the video are relevant to issues which were both fundamental to the plaintiffs' case and which were vigorously disputed by IBM. For instance, the plaintiffs had to prove causation as an element of both their strict liability and negli-

gence claims. Throughout the trial, IBM disputed both the general notion that the IBM keyboard could cause repetitive stress injuries, as well as the more specific claim that use of an IBM keyboard caused Mrs. Piester's particular injury. The admissions contained in the video are relevant to the plaintiffs' proof on these issues. In addition, as part of the plaintiffs' failure to warn claim, they had to convince the jury that IBM's failure to warn Mrs. Piester of the keyboard's dangerous propensities rendered the keyboard unreasonably dangerous. The plaintiffs' proof on this issue required a showing that IBM was on notice of the keyboard's dangers prior to the date of Mrs. Piester's injury. Therefore, the admissions contained in the video are relevant to the plaintiffs' proof. Furthermore, the video demonstrates that IBM felt the need to provide a warning to its own employees, which would have been probative on the issue of whether IBM should have provided a similar warning to other users of the keyboard, including Mrs. Piester.[1]

■ Second, I also now believe that I committed prejudicial legal error in my inconsistent rulings following discovery violations by the parties with respect to the testimony of their expert witnesses, Dr. Laura Welch and Dr. Peter Nathan. Fed.R.Civ.Pro. 26(a)(2)(B) provides, in pertinent part, that the disclosure of the identity of an expert witness shall "be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions...." Such a disclosure must be supplemented if the party later learns that it is incomplete and if the additional information has not otherwise been made known to the other parties. Fed.R.Civ.Pro. 26(e)(1). The

purpose of this rule is to allow the parties "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed.R.Evid. 26(e)(1) advisory committee's note. In the course of discovery, IBM did submit a report from its expert witness, Dr. Nathan. However, that report contained none of the detail required by Rule 26(a)(2)(B) relating to a critical aspect of Dr. Nathan's testimony: the failure of the IBM keyboard to cause Mrs. Piester's injury.

Fed.R.Civ.Pro. 37(c)(1) provides, in pertinent part that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial ... any witness or information not so disclosed...." When the plaintiffs challenged the scope of Dr. Nathan's testimony on causation, I wrongly placed the burden and the blame upon the plaintiffs, rather than upon the defendant, for failing to discover the scope of Dr. Nathan's testimony as well as the data and bases underlying his opinions. I stated, at the time, that the plaintiffs were at fault for failing to depose Dr. Nathan until the night before his testimony. I failed to realize that, under Rule 26, IBM was obligated to disclose this material to the plaintiffs without forcing them to depose Dr. Nathan in order to elicit it. See Fed.R.Civ.Pro. 26 advisory committee's note. As a result, I further failed to realize that this testimony was therefore presumptively excluded. Fed. R.Civ.Pro. 37(c)(1). Therefore, I allowed Dr. Nathan to testify as to the bases for and the data underlying his opinions on causation, despite the fact that IBM had failed to disclose this material at the proper time during the discovery process. Standing on its own, my decision to allow Dr. Nathan to testify to matters that he failed to disclose in his report may have been within my discretion.

---

1. I note that the relevance of the IBM video to the issues of notice and the failure to warn Mrs. Piester is dependant upon the plaintiffs laying a foundation demonstrating that IBM produced the video (thus making the statements contained within it) before the date of Mrs. Piester's last use of the IBM keyboard. When the plaintiffs initially proffered the video during the trial, the parties disputed the date that the video was created. The video would not ultimately be admissible for these purposes if the plaintiffs do not lay a foundation showing that the video was filmed before Mrs. Piester's last date of use of the IBM keyboard. The video would be admissible, in any case, as an admission on the issue of causation.

However, I now acknowledge that it was inconsistent with my earlier ruling regarding the plaintiffs' failure to comply with their discovery obligations for their expert witness, Dr. Welch. IBM had deposed Dr. Welch on August 29–30, 1994. On October 27, 1994, Dr. Welch had conducted a physical examination of Mrs. Piester, and Dr. Welch issued a report on that examination on January 5, 1995. The defendants did not receive a timely copy of the report. Although Mr. Phillips stated in an affidavit that he recollected having sent the report to IBM in January, he also acknowledged that it was possible that the report was inadvertently not sent to IBM at that time. Affidavit of Steven J. Phillips of September 8, 1995, at 2. In any case, IBM received copy of the report on August 8, 1995, when the plaintiffs forwarded a copy of it to IBM. *Id.* Thus IBM had a copy of the report for more than a month before the start of trial. However, I ruled that, because of the plaintiffs' failure to comply with their discovery obligation to ensure that IBM received a copy of Dr. Welch's report, in a timely manner, they were precluded from eliciting from Dr. Welch any testimony mentioning her October 27, 1994, examination of Mrs. Piester or to the contents of her January 5, 1995, report of that examination. In contrast, I allowed Dr. Nathan to testify on the basis of material which IBM had failed to disclose properly to the plaintiffs and which I allowed Mr. Phillips only an hour to look over before cross-examination. In hindsight, my treatment of the situation regarding Dr. Welch was inconsistent with that regarding Dr. Nathan. This inconsistency was prejudicial to the plaintiffs, as Dr. Welch and Dr. Nathan were the respective parties' key expert witnesses on the question of causation. For the plaintiffs, Dr. Welch's testimony was critical to their proof of the allegations which lay at the foundation for their case: that the IBM keyboard was unreasonably dangerous and that use of the keyboard caused Mrs. Piester's injury. The exclusion of Dr. Welch's physical examination of Mrs. Piester and her subsequent report allowed IBM, on cross-examination, substantially to undermine the basis for her expert opinion. Thus, I now realize that I erred in not excluding Dr. Nathan's testimony outside the scope of what had been disclosed to the plaintiffs at the proper time.[2]

Because of the legal errors discussed above, a new trial must be granted in order to prevent injustice to the plaintiffs.

## C. Conclusion

When this case goes to trial again, I hope that the parties will use this opportunity to present it in a more controlled fashion. It seems to me that with the benefit of the transcripts that have been prepared, all the many rulings that had to be made can now be finalized by pre-trial Motions in Limine. All these issues, in their entirety, can be listed and disposed of, thus paving the way for a smooth trial.

For the foregoing reasons, the plaintiffs' Motion for New Trial is granted.

SO ENTERED.

---

**2.** My conclusion that I should have excluded part of Dr. Nathan's testimony is based upon the fact that, earlier in the trial, I had excluded part of Dr. Welch's for similar discovery violations. Of course, it also would have been well within my discretion to allow Dr. Welch's testimony if I believed that IBM was not prejudiced, and if that were the case, I most likely should allow Dr. Nathan's as well.