**Ralph B. COTTON, et al., Plaintiffs,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**No. CIV.A.01–0801TFH/DAR.**

United States District Court, District of Columbia.

May 28, 2003.

Charles Clinton Parson, charles C. parson & Associates, Chartered, Washington, DC, Leonard Joseph Kelly, Washington, DC, for plaintiffs.

Mark Francis Sullivan, Washington Metro. Area Transit Authority, Office of Gen. Counsel, Washington, DC, for defendant.

### MEMORANDUM OPINION AND ORDER

ROBINSON, United States Magistrate Judge.

This action was referred to the undersigned United States Magistrate Judge for

full case management on July 13, 2001 (Docket No. 4). By a motion filed on April 17, 2003, Plaintiffs ask the undersigned to recuse herself from this action. As grounds therefore, Plaintiffs invoke § 455(a) of Title 28 of the United States Code, and maintain that the undersigned's rulings have deprived Plaintiff Ralph Cotton of "his right to conduct discovery and to advance this case to trial." Motion for Recusal (Docket No. 91) at 1.[1] Plaintiffs further maintain that the undersigned has "harm[ed] the interests of undersigned counsel's clients" in three other civil actions filed in this court by Plaintiffs' counsel. *Id.* at 2. In sum, Plaintiffs submit that the undersigned "has pursued a relentless pattern of pervasive bias against [counsel] and his clients[,]" and undertaken "an intentional effort to thwart any prospect of allowing [counsel's] clients to achieve any favorable resolution of their action on the merits." Points and Authorities in Support of [Plaintiffs'] Motion for Recusal ("Plaintiffs' Memorandum") at 31. In further support of their motion, Plaintiffs filed a three-inch thick, 704–page appendix, comprised of copies of motions, memoranda, exhibits and orders filed in the instant case and in the three other cases as to which Plaintiffs claim that the undersigned has harmed the interests of their counsel's clients.

Defendant opposes Plaintiffs' motion, principally on the grounds that (1) the proposition that the undersigned "is 'out to get' plaintiffs' counsel ... is without justification in fact," and (2) the orders entered by the undersigned in this action were well-founded and within the bounds of the undersigned's discretion. Defendant's Opposition to the [Plaintiffs'] Motion to Re-

cuse Magistrate Judge Deborah Robinson ("Defendant's Opposition") at 1. In addition, Defendant avers that Plaintiffs' counsel "has stubbornly refused to cooperate in scheduling and conducting discovery," and has thereby contributed to the delay in the conduct of discovery. *Id.* at 2.

Plaintiffs did not file a reply.

Upon consideration of Plaintiffs' Motion for Recusal, Defendant's opposition thereto and the entire record herein, Plaintiffs' motion will be denied.

## DISCUSSION

 Section 455(a) of Title 28 of the United States Code provides that

[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a). This court has held that

[t]o sustain its burden and compel recusal under Section 455(a), the moving party must demonstrate the court's reliance on an "extrajudicial source" that creates an appearance of partiality or, in rare cases, where no extrajudicial source is involved, the movant must show a "deep-seated favoritism or antagonism that would make fair judgment impossible."

*Tripp v. Executive Office of the President,* 104 F.Supp.2d 30, 34 (D.D.C.2000) (citing *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). The existence of a ground warranting recusal under Section 455(a) is to be determined by an objective standard. *Id.* (cita-

---

1. On April 30, 2003, Plaintiffs' counsel filed a Suggestion of Death, in which he advised that Plaintiff Ralph Cotton died on April 23, 2003 (Docket No. 95). On May 15, 2003, counsel moved to amend the complaint "to designate [Plaintiff] Judith Cotton as the Personal Representative of the Estate of Ralph Cotton[.]" Motion to Amend Complaint (Docket No. 99) at 1.

tions omitted); *see also Liteky,* 510 U.S. at 548, 114 S.Ct. 1147; *Holmes v. NBC/GE,* 925 F.Supp. 198, 201 (S.D.N.Y.1996). The court has broad discretion in the consideration of the sufficiency of a motion to remove a judicial officer pursuant to 28 U.S.C. § 455(a). *Cobell v. Norton,* 237 F.Supp.2d. 71, 78 (D.D.C.2003), citing *James v. District of Columbia,* 191 F.Supp.2d 44, 46–47 (D.D.C.2002); *see also Holmes,* 925 F.Supp. at 201. In its determination of the motion, the court "must begin its analysis of the allegations supporting such a request with a presumption against disqualification." *Cobell,* 237 F.Supp.2d at 78 (citations omitted). In order to overcome the presumption, the moving party must demonstrate by clear and convincing evidence that disqualification is required by Section 455(a). *Id.* at 78–79 (citations omitted); *see also Holmes,* 925 F.Supp. at 201 (citations omitted) ("There is a presumption of judicial impartiality, ... and the burden the movant must carry to overcome this presumption is 'substantial.' ").

### Claims Regarding Prejudice and Bias

■ Applying the applicable objective standard, the undersigned finds that Plaintiffs have failed to discharge their burden to show by clear and convincing evidence that disqualification under Section 455(a) is warranted. Plaintiffs' claim of bias is predicated entirely upon the undersigned's rulings with respect to the conduct of discovery in the instant action, and rulings regarding discovery and other issues in three other actions filed by Plaintiffs' counsel. However, it is settled that "[a] court's judicial rulings[,] ... standing alone, 'almost never constitute [a] valid basis for a bias or partiality motion.' " *James,* 191 F.Supp.2d at 48 (quoting

*Holmes,* 925 F.Supp. at 201)(internal citations omitted); *see also* 12 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3066 (3d ed.2002).[2] Plaintiffs offer no authority in support of the proposition that a judge's "appearance of impartiality" is "reasonably questionable" (Motion for Recusal at 1) solely by reason of the judge's course of rulings.

■ Moreover, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings,* do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Tripp,* 104 F.Supp.2d at 34–35 (citing *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147). While Plaintiffs' counsel accuses the undersigned of "an unmistakable pattern of prejudice and bias" against him and his clients, including Plaintiffs (Motion for Recusal at 2), counsel points to no entry in the 704–page appendix or elsewhere which indicates that the undersigned has ever expressed any predisposition, animus or antagonism against him or any of his clients; nor does counsel suggest that the undersigned's supposed "prejudice and bias" stem from any "extrajudicial source." Rather, counsel relies almost entirely upon the oft-repeated conclusion that the undersigned has attempted to "thwart" his clients' interests in conducting discovery. *E.g.,* Plaintiffs' Memorandum at 1, 6, 21, 23.

■ Finally, the undersigned finds that the irresponsible and scurrilous invective interspersed in Plaintiffs' account of the undersigned's course of rulings does not, either alone or in conjunction with the

---

**2.** While the undersigned, in *James,* evaluated a motion for disqualification made pursuant to Section 144 of Title 28, rather than Section 455(a), the identical objective standard governs both provisions. *Holmes,* 925 F.Supp. at 201.

rulings, warrant recusal pursuant to Section 455(a).[3] These conclusory, wholly unsubstantiated claims are insufficient for Plaintiffs to overcome a judicial officer's presumed impartiality.[4]

### Claims Regarding the Conduct of Discovery

The undersigned further finds that Plaintiffs' account of the record of proceedings in this action is devoid of context, and in some instances, inaccurate. On August 20, 2001, the undersigned entered an Initial Scheduling Order which provided, *inter alia,* for a period of discovery of eight months, and granted each side up to ten non-expert depositions and 40 interrogatories (Docket No. 10).

One month later, Plaintiffs moved for a protective order to bar the deposition of Plaintiff Ralph Cotton on the ground that "Mr. Cotton [was] very confused about his whereabouts and his memory [was] overtly compromised." Points and Authorities in Support of Plaintiffs' Motion for Protective Order (Docket No. 20) at 1. In the memorandum in support of their motion, Plaintiffs asked that the deposition of Mr. Cotton be "delay[ed] . . . until such time as an appropriate assessment of this plaintiff's competency to give testimony has been determined." *Id.* at 2. Defendant opposed the motion for protective order, moved to compel the deposition and requested entry of order directing the sequence of other depositions; in the alternative, Defendant moved for an independent medical examination of Plaintiff Ralph Cotton's competency (Docket Nos. 18, 19). On October 11, 2001, the undersigned granted both Plaintiffs' motion for a protective order and Defendant's motion for an independent medical examination of Plaintiff Ralph Cotton for the limited purpose of an evaluation of his competency (Docket No. 21). The undersigned further ordered that discovery by both sides be stayed pending the determination of Mr. Cotton's competency.

In the two-month period from the entry of the Initial Scheduling Order until the entry of the order staying discovery pending the determination of Plaintiff Ralph Cotton's competency, the only discovery taken by Plaintiffs was a single deposition. Certificate Regarding Discovery (noticing the deposition of T.L. Royce) (filed September 12, 2001). During that two-month period, Plaintiffs' counsel failed to propound any written discovery requests. Indeed, at no time since this action was commenced has Plaintiffs' counsel served

---

3. Among the more prominent examples are the assertions that the undersigned has manifest a "transparent disposition" in favor of the defendant in another case filed by Plaintiffs' counsel (Plaintiffs' Memorandum at 3); that the undersigned has undertaken "an undisguised effort . . . to delay an elderly plaintiff's action until it expires with his death" (*Id.* at 6); and that the undersigned "found it more gratifying to side with [Plaintiffs' counsel's] opponent" (*Id.* at 35). In addition, Plaintiffs' include citations to a treatise regarding uncharged criminal conduct as an authority in support of their motion. Motion for Recusal at 2; Plaintiffs' Memorandum at 32. Plaintiffs even appear to suggest that the Chief Judge of the court has contributed to injury they have allegedly suffered as a result of the actions of the undersigned. Plaintiffs' Memo-

randum at 6, 26, 29 (Plaintiffs' motions "continu[ed] to languish in [Chief] Judge Hogan's chambers"), 21 (the Chief Judge referred the action to the undersigned for full case management "without consulting the parties").

4. In at least two instances, Plaintiffs' counsel appears to misapprehend both the movant's burden in a recusal motion and the presumption of impartiality by suggesting that the undersigned "can point [to no cases] to show that she ever acted in an impartial manner in dealing with [Plaintiffs' counsel's] clients" (Plaintiffs' Memorandum at 7), and that the undersigned "does not have a basis for suggesting that 'numerous instances' exist in which she has made rulings which favored [Plaintiffs' counsel] or his clients." *Id.* at 39.

interrogatories, requests for production of documents, or requests for admissions. Defendant's Opposition to the Plaintiff's Motion to Compel Discovery (Docket No. 53) at 3 ("plaintiffs have never propounded any discovery request to WMATA under F.R.Civ.P. Rule 33 and 34 since this case began").[5]

On December 18, 2001, the undersigned, having received the report of the independent medical examination, ordered that the parties meet and confer regarding the application of Rule 17(c) of the Federal Rules of Civil Procedure (Docket No. 31). The parties were unable to agree, and on January 7, 2002, Defendant filed a Motion to Dismiss Claims of Ralph Cotton, or, Alternatively, for the Appointment of an Attorney at Law as Guardian [ad] Litem (Docket No. 34). The undersigned again ordered counsel to meet and confer regarding the status of discovery and Plaintiff Ralph Cotton's competence (Docket No. 52). Although Plaintiffs' counsel did not intend to contest a finding that Plaintiff Ralph Cotton was incompetent, the parties disagreed regarding the appropriate person to represent Mr. Cotton's interests in the litigation. Joint Statement Regarding Meet and Confer Conference (Docket No. 56) at 1–2.[6] On September 16, 2002, the undersigned determined "that notwithstanding the apparent stipu-

lation regarding the incompetence of plaintiff Ralph Cotton, a competency hearing will be conducted so that the Court may make a more informed determination regarding the course of further proceedings." September 16, 2002 Order (Docket No. 58).

During the competency hearing, held on September 20, 2002, Defendant called one witness, Dr. Lanning E. Moldauer. Dr. Moldauer testified that Plaintiff Ralph Cotton lacks the competency to provide truthful testimony either in a deposition or at trial, or to respond to any discovery requests. *See* Transcript of Competency Hearing Before the Honorable Deborah A. Robinson United States Magistrate Judge (Docket No. 69) at 15. Among Dr. Moldauer's conclusions was that Plaintiff Ralph Cotton's short-term and long-term memory were "both extremely poor ... bottom one percent or less." *Id.* at 14. Dr. Moldauer further testified that Plaintiff Ralph Cotton's "[cognitive deficits] [are] so far below even a disputable threshold of competency that I could not imagine him getting back anywhere close to that threshold." *Id.* at 18. Plaintiffs offered no evidence at the hearing.

On September 25, 2002, the undersigned granted Defendant's motion for the appointment of an attorney at law to serve as guardian ad litem (Docket No. 60). The

---

**5.** Plaintiffs did file two motions to compel discovery. In their first motion (Docket No. 8), Plaintiffs sought to compel Defendant's compliance with the initial disclosure requirements of Rule 26(a)(1), and to compel Defendant to produce a Rule 30(b)(6) designee. On the same date that the Initial Scheduling Order was entered, the undersigned denied Plaintiffs' motion without prejudice. *See* Defendant's Opposition to Plaintiffs' Motion for Protective Order (Docket No. 19) at 5. Plaintiffs never renewed the motion.

In their second motion (Docket No. 48), Plaintiffs sought to "[compel] the Defendant to provide an index which identifies which medical records it received [in response to

Defendant's request] from Plaintiff Ralph Cotton's health care providers." The records which Plaintiffs addressed in their second motion to compel were records which Defendant subpoenaed from Plaintiff Ralph Cotton's health care providers, and which Defendant agreed to copy and provide to Plaintiffs' counsel. The assertion that Defendant was "permitted ... to pursue its own discovery into Ralph Cotton's medical history" (Plaintiffs' Memorandum at 26) is therefore incorrect.

**6.** Counsel for Plaintiffs sought to amend the complaint so that Plaintiff Judi Cotton would proceed both as a plaintiff and as next of friend of Ralph Cotton.

undersigned also scheduled a status hearing and scheduling conference for October 24, 2002, and required Plaintiffs' counsel of record, counsel for Defendant, and the appointed guardian to appear. In addition, the undersigned ordered counsel and the guardian to meet and confer in advance of the hearing. *Id.* In order to allow the appointed guardian the opportunity to meet with Plaintiff Ralph Cotton and confer with counsel, the undersigned continued the scheduling conference until January 9, 2003 (Docket Nos. 73, 74, 75, 76, 77).

During the conference, the undersigned vacated the stay of discovery, bifurcated discovery into liability and damages phases, and ordered that the liability phase proceed first. The undersigned permitted each side seven non-expert depositions, and set dates for the parties' Rule 26(a)(2) disclosures. The undersigned set July 1, 2003 as the date for the close of discovery. The undersigned further ordered that "plaintiffs ... serve their answers to defendant's interrogatories by February 14, 2003, and that further discovery is stayed pending service of those answers."[7] January 13, 2003 Order (Docket No. 79).

On March 3, 2003, Defendant filed a motion to compel (Docket No. 81), and maintained that the "answers to interrogatories and responses to requests for production provided by both plaintiffs were evasive and non-responsive, rather than good faith responses following a due diligence investigation[.]" Defendant's Motion [to] Compel Discovery and for Sanctions at 2. The undersigned granted Defendant's motion to compel on April 9, 2003, and ordered Plaintiffs to "serve complete, responsive answers to Defendant's interrogatories ... no later than Wednesday, April 16, 2003" (Docket No.

88). As of May 1, 2003, Plaintiffs had not done so. Defendant's Opposition [to the Plaintiff's Motion to Recuse Magistrate Judge Deborah Robinson] at 10.

Plaintiffs' counsel's failure to comply with his own discovery obligations, including the obligation to meet and confer with opposing counsel in an effort to resolve pending disputes, has most recently manifest itself in two instances. First, Plaintiffs' counsel, without explanation, walked out of a meet-and-confer session with counsel for Defendant, refusing to continue their discussion regarding the scheduling of depositions. Defendants' Opposition, Transcript of the Conference of Parties to Schedule Depositions (Exhibit B) at 16. Second, Plaintiffs' counsel has failed to consent to a protective order which would have allowed Defendant to produce the proprietary documents of Schlinder Elevator Corporation, which Defendant identified in its initial disclosures. *Id.* at 8. Both Defendant and Schlinder have been prepared to produce the documents to Plaintiffs' counsel, but were unable to do so because no protective order had been entered. *Id.* at 8–9.

In sum, the record reflects that notwithstanding the stay of discovery occasioned by proceedings with respect to Plaintiff Ralph Cotton's incompetency, Plaintiffs' counsel has had the opportunity to propound interrogatories, requests for production of documents and requests for admissions, but has inexplicably refrained from doing so; to receive engineering documents which were identified by Defendant in its initial disclosures, but declined to agree to the protective order which would have allowed Defendant to produce the documents; to take up to seven depositions, but proceed with only one. Under

---

7. Defendant propounded the interrogatories in September, 2001. The parties had previously reached an agreement that Plaintiffs would serve their answers to the interrogatories by September 28, 2002. Plaintiffs failed to meet that deadline. Joint Statement Regarding Meet and Confer Conference at 2.

**46**

these circumstances, it cannot reasonably be said that Plaintiffs' ability to conduct discovery was "thwarted" by Defendant, the undersigned, or the Chief Judge of this Court.

## CONCLUSION

Plaintiffs have failed to carry their burden to show that disqualification is required by Section 455(a) of Title 28 of the United States Code. In their effort to make the requisite showing, Plaintiffs rely upon both a course of rulings which cannot satisfy the applicable standard, and a misleading account of the record in this action. On the basis of these findings, it is, this 28 day of May, 2003,

**ORDERED** that Plaintiffs' Motion for Recusal (Docket No. 91) is **DENIED.**