WILLIAMS, Senior Circuit Judge,
concurring:
The record here unequivocally discloses a disputed issue of material fact. Yet the district court granted summary judgment. If the sole aim of the law were an open search for truth, we would plainly reverse.
The plaintiffs claim that a policy of the District of Columbia requiring that firefighters be .clean-shaven violates their rights under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq. The District acknowledges that the plaintiffs’ religious aversion to being clean-shaven is sincere, and no one disputes the proposition that the District’s interest in safety — that of the plaintiffs themselves, fellow workers 'whose safety is linked to their performance, and the citizenry at large — is compelling. For the reasons developed in the court’s opinion, the case comes down to whether bearded firefighters can safely rely on a self-contained breathing apparatus (“SCBA”). Before us the District contends that it should have had a chance to prove at trial that with a bearded wearer the SCBA poses serious safety risks for which the District’s policy *552 is the least restrictive solution. Unfortunately for the District, its own muddled litigation strategy rendered summary judgment for the plaintiffs a legitimate outcome.
With their motion for summary judgment plaintiffs submitted their “Statement of Material Facts,” describing a SCBA as
supplying] a continuous flow of pressurized air from tanks worn by firefighters into their facemasks, so that any minor imperfections in the facemask’s seal will result in an outward flow of clean air from the mask, rather than an inward flow of potentially dangerous gases or particulates. It is therefore not dangerous for a firefighter to work in a hazardous environment using an SCBA. Joint Appendix (“J.A.”) 110-11 ¶ 5. If this were undisputed, the District’s safety claim (at least as they frame it here) would dissolve. But the District disputed plaintiffs’ statement, saying,
The Defendant disputes the statements in paragraph 5. A SCBA does not supply “a continuous flow of pressurized air”; rather, pressure-demand regulators are designed to provide breathing air into the facepiece when the pressure in the facepiece falls below a prerdefined (positive) value. If an acceptable seal is not maintained, an inward flow of air comes through the regulator during exhalation or during the pause between breaths. This feature of the pressure-demand regulator helps to conserve the supply of air earned on the wearers [sic] back.
Id. at 111 ¶ 5. In support, the District relied on an expert declaration, which labeled the plaintiffs’ assertion as “incorrect” and explained that “[w]hen an acceptable seal is maintained, no inward flow of air comes through the regulator during exhalation or during the pause between breaths.” Id. at 120 ¶ 22.
The District’s response is susceptible of two interpretations. On the one hand, the District could have been simply correcting a rather inconsequential technical detail— clarifying, in other words, that there are times when no air is supplied through the regulator. On the other hand, the District could have been saying that, absent an acceptable seal, the user is at risk of breathing in contaminated outside air. The references to air from the “regulator” and conservation of air supply favor the first interpretation; but the pointlessness of correcting plaintiffs’ technical error, prefaced by the claim to “dispute[ ]” their contention, supports the second. The balance favors the first interpretation, legitimating the grant of summary judgment to the plaintiffs.
But the record also contains scholarly work making the second interpretation far more plausible. The District’s expert, Roy T. McKay, in his first declaration identified a number of articles on “the science of facial hair and the negative performance it has on respiratory protection,” id. at 87, among them Bruce J. Held, Facial Hair and Breathing Protection, Int’l Fire Chief, Dec. 1980, at 25, J.A. 90 (reporting on research at Lawrence Livermore National Laboratory under contract W-7405-ENG-48). According to Held, “a person doing moderately heavy to heavy work can ‘over-breathe’ the air supply if there is a leak, and suck or pull in outside contaminated air through the leak.” J.A. 92.
McKay’s citation and provision of the Held article came, to be sure, in a declaration offered at an earlier stage; and even then the declaration itself didn’t call attention to the “overbreathing” problem. It would thus have required a good deal of digging on the part of the district court to discover Held’s expert conclusion on the matter. To avert the need for such digging, the district court’s Local Rule 7(h) states:
*553 An opposition to [a summary judgment] motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.
The rule embodies the thought that judges “are not like pigs, hunting for truffles buried in briefs” or the record. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991).
However buried the Held article may have been, though, the record clearly alerted the court to the Occupational Safety and Health Administration’s belief that facial hair poses risks for the use of respirators generally. As the district court noted in its 2005 opinion, the District’s disputed order simply requires firefighters to
comply with the face-fit requirements of 29 C.F.R. § 1910.134, which is the OSHA regulation for “respiratory protection.” That regulation provides, at § 1910.134(g)(1)®, that
The employer shall not permit respirators with tight-fitting facepieces to be worn by employees who have:
(A) Facial hair that comes between the sealing surface of the facepiece and the face or that interferes with valve function.
Potter v. District of Columbia, 382 F.Supp.2d 35, 40 (D.D.C.2005).
The OSHA regulation, to be sure, appears not to govern the District’s firefighters. 29 U.S.C. § 652(5) excludes state employees generally, and § 652(7) explains that the term “state” includes the District. Although under some conditions Environmental Protection Agency regulations may extend coverage to otherwise exempt workers, see 40 C.F.R. §§ 300.5, 300.150(d), the District has made no real effort to show that those conditions are applicable to plaintiffs. The regulation— on which the District’s own policy was based — nonetheless plainly reflected OSHA’s judgment that facial hair poses excessive risk.
Moreover, the OSHA regulation clearly rested on the agency’s concern with “over-breathing.” Explaining its decision to require fit testing with positive-pressure respirators, OSHA observed:
Even positive pressure respirators do not always maintain positive pressure inside the facepiece, particularly when facepiece fit is poor, strenuous work is being performed, and overbreathing of the respirator occurs.... Leakage must be minimized so that users consistently achieve the high levels of protection they need.
63 Fed.Reg. 1152, 1223/2 (1998). OSHA’s explanation for its decision went on at length, and its position was firm.
While a judge isn’t a pig hunting for truffles in the parties’ papers, neither is he a potted plant. A judge on notice of a contradiction between the plaintiffs’ position and the views of a federal agency might hesitate to find the issue wholly undisputed. And the district court in this case was not passive across the board. In accepting the plaintiffs’ theory that bearded firefighters could be quickly redeployed either to areas requiring the use of SCBAs or to areas not requiring any respirators, it reached back for evidence introduced over two years earlier, in a different context, and not identified in the plaintiffs’ summary judgment motion. See Tr. of Status Conf., Nov. 29, 2007, at 4-5 (explaining that evidence introduced in the August 1, 2005 hearing “is what informed the plausibility of the reassignment plan that I talked about” in the September 28, 2007 memorandum opinion). While this variance in the court’s zeal is troubling, the District rests no claim on the fact, and such a claim, even if made, would likely not *554 justify a different result. Departures from passivity are almost always bound to give one side a net benefit, yet such departures are not ipso facto error. Burdett v. Miller, 957 F.2d 1375, 1380 (7th Cir.1992) (“[Judges] should not be criticized when they point out to counsel a line of argument or inquiry that he has overlooked, although they are not obligated to do so.... When the unfolding evidence persuaded the district judge that the plaintiffs counsel had misidentified the RICO enterprise, she could without impropriety have invited him to shift the line of his attack ....” (internal citations omitted)); cf. United States v. Carson, 455 F.3d 336, 355 (D.C.Cir.2006) (explaining that the “threshold for a showing of bias is high”— the judge’s conduct must “reveal such a high degree of favoritism or antagonism as to make fair judgment impossible” (quoting United States v. Edmond, 52 F.3d 1080, 1099 (D.C.Cir.1995), and Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994))).
The outcome, nonetheless, seems extraordinarily unsatisfactory. Looking on the bright side, one might see it as constituting a semi-natural experiment, in which the District of Columbia will fight calamities with some of its firefighters bearded, while other firefighting entities adhere to OSHA’s rule or its equivalent. Perhaps the difference will prove inconsequential. The experiment is far from ideal, however. Most obviously, the likelihood of acute calamity — and thus the risk that response teams will be stretched to the breaking point — seems greater in the District than almost any other American city.
Of course even a permanent injunction is not irredeemably permanent. The Federal Rules of Civil Procedure allow judges to “relieve a party or its legal representative from a final judgment, order, or proceeding” if, among other things, “applying it prospectively is no longer equitable.” Fed.R.Civ.P. 60(b)(5). The rule applies to a permanent injunction as long as a party seeking relief “can show ‘a significant change either in factual conditions or in law.’ ” Agostini v. Felton, 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). While the exact nature of such a change may be hard to imagine, there is at least some comfort in the hope that the experiment launched by this judgment will end without having falsified the plaintiffs’ theory.