**In re Complaint of Jane DOE.**[1]

**JCP No. 08–10–90050.**

Judicial Council of the Eighth Circuit.

March 22, 2011.

WILLIAM JAY RILEY, Chief Judge.

This is a judicial complaint filed by a disbarred attorney (complainant) on November 12, 2010, against a United States magistrate judge (respondent). The undersigned requested a response from respondent, who timely replied to the complainant's allegations.

## I. BACKGROUND

The complaint arises out of an unusual, long-running federal case involving the

---

gious and hostile manner while on the bench is ... not merits-related.").

1. Under Rule 4(f)(1) of the Eighth Circuit Rules Governing Complaints of Judicial Mis-

conduct and Disability, the names of the complainant and the judicial officer complained against are to remain confidential, except in special circumstances not here present.

complainant as attorney and contemnor, and the respondent as judicial law clerk and magistrate judge. A brief summary of the lengthy history of the underlying federal case provides context for the complainant's allegations.

For many years, the complainant served as attorney for a certain family and handled most of its legal work. In April 2005, one family member contracted with a partnership to sell a parcel of real estate for over $2 million. When the partnership failed to appear for the real estate closing, the family member's mother sued the partnership and others in federal court in July 2005.[2] The complainant represented the mother in the federal case.

In November 2005, the defendants in the federal case alleged the complainant committed misconduct in her representation and moved to disqualify complainant and requested sanctions. The defendants alleged the complainant had become a material witness in the lawsuit and "engaged in a past pattern of bad faith and abusive misconduct in this and related litigation making disqualification in this case an appropriate sanction."

The complainant withdrew her representation with leave of the district court, mooting the disqualification motion, but a magistrate judge (not the respondent) proceeded to decide the sanctions issue. In March 2006, the magistrate judge determined, in a 58-page written order, that the complainant had committed misconduct in her prosecution of the lawsuit and, in the exercise of the court's inherent powers, determined a monetary sanction against the complainant was appropriate. The magistrate judge found the complainant "acted in bad faith" by, among other things, (1) knowingly contacting a represented opposing party after unilaterally determining that party's lawyer had a conflict-of-interest, "ultimately forc[ing] the defendants] to retain new counsel"; (2) "attempted to circumvent this court's discovery rules through the use of state court discovery proceedings"; and (3) "served multiple harassing, threatening, and accusatory demands on [the defendants]." The magistrate judge granted the motion for sanctions and ordered the complainant personally to pay for the costs including attorney fees the defendants incurred in pressing their motion. The magistrate judge ordered a copy of its ruling be sent to the state supreme court's disciplinary office and initiated further proceedings to set the amount of the sanction.

At the time, and unbeknownst to the complainant, the respondent served as the magistrate judge's law clerk. The respondent says she "prepared the draft opinion," which the magistrate judge "reviewed, edited, and signed." At the magistrate judge's direction, the respondent provided counsel a copy of the order.

In April 2006, the complainant wrote the magistrate judge a letter asserting the respondent "is effectively disqualified from any involvement in matters wherein I appear as Counsel or any matter involving me under Canon 2 of the Code of Conduct for Law Clerks (1994 ed.)." The complainant asserted there was an appearance of impropriety for the following reason:

I have previously sued [the respondent's] husband on behalf of one [client]. In late 1996 or early 1997 I filed a lawsuit against [a law firm], and its individual partners, including [the respondent's husband]. My understanding is that [the respondent's husband] is, and was at all times relevant here, the husband of [the respondent]. The lawsuit

---

**2.** What began as a breach-of-contract action evolved into other actions over the years. In the district court, the federal case is presently a collections action against the complainant.

was filed in [state district court] and was concluded in 1999.... Judgments in [the state district court] automatically operate as a lien against real property.... Thus the lawsuit against [the respondent's husband] would have necessarily impacted [the respondent] in a potentially negative manner because of her joint ownership of property with [her husband].

The magistrate judge denied the motion without citing any legal authority, finding "no conflict of interest nor any appearance of impropriety." The magistrate judge indicated the respondent had "checked the applicable file in the [state court]" and determined the federal case was "totally unrelated." The magistrate judge attached a two-page affidavit to his order, sworn out by the respondent, denying the complainant's motion. In the affidavit, the respondent testified she was not aware of the state court lawsuit against her husband but, upon investigation, learned her husband was not a partner in the law firm when the conduct giving rise to the lawsuit allegedly occurred or when the lawsuit was filed; and was never served with the lawsuit. Further, the respondent discovered the lawsuit was dismissed with prejudice in 1999. The respondent swore the lawsuit did not impact her husband or her in any way and "has not in any way affected the manner in which I perform my responsibilities for the court."

The complainant asked the district judge[3] to review the magistrate judge's order denying the complainant's motion to disqualify the respondent. In addition to disqualification of the respondent, the complainant sought the recusal of the magistrate judge.

In June 2006, the district judge found the complainant's allegations of impropriety against the respondent "groundless," "baseless," "sheer nonsense," "totally lacking in factual and legal support," "yet another example of her improper conduct," and "frivolous, malicious, and filed for the improper purpose of impeding an award of fees and expenses to counsel for the defendants." The district judge reasoned:

[N]o reasonable person, who is informed on the facts, would perceive any lack of impartiality where (a) a law clerk works on a federal antitrust case, with state law claims, involving a failed commercial real estate transaction, (b) when the federal suit is filed by a lawyer (c) who is accused of unethical behavior in the federal case and (d) who eight years earlier filed a malpractice suit in state court against the law clerk's lawyer-husband and the members of the husband's firm (e) when the husband's conduct was not the source of the alleged malpractice, (f) when the husband was not a partner in the firm when the alleged malpractice took place, (g) when the husband was never served with a summons, (h) when the state case was dismissed with prejudice about six years before the federal case was commenced, (i) when no money judgment was entered against the law clerk's husband or his firm, and (j) when the parties to, and the issues involved in, the federal and state cases are unrelated.

The district judge concluded the complainant's motion "cries out for both sanctions and discipline" but, "at this time, I shall do nothing more than send a copy of this decision to [the magistrate judge] and those disciplinary authorities who are already investigating [the complainant's]

---

**3.** The complainant later filed a judicial complaint against the district judge, which the undersigned dismissed as unsupported, frivolous and lacking sufficient evidence to support an inference misconduct had occurred. *See generally* JCP No. 08–11–90005.

conduct." The district judge encouraged the magistrate judge to consider the defendants' expenses in resisting the complainant's disqualification and recusal motions when determining the amount of the pending sanctions order.

In August 2006, the magistrate judge fixed the amount of the sanctions award. The defendants requested over $45,000 in attorney fees from the complainant. The magistrate judge granted the request in part. The magistrate judge reduced the award to approximately $33,000 because, "[a]lthough it may pale in comparison to the student loan obligations of many newly admitted attorneys," a $45,000 award "is so large and would be a tremendous financial burden on any attorney." The magistrate judge determined an award of approximately $33,000 was appropriate because the complainant's "conduct was reprehensible and antithetical to the legal profession and the ordered resolution of civil disputes." The respondent did not participate in the fixing of the sanctions award.[4]

The complainant appealed the magistrate judge's sanctions award to the district judge. In November 2006, the district judge affirmed the magistrate judge's orders.

In January 2007, the state supreme court suspended the complainant's license to practice law for one year because of unrelated neglect of other client matters. The complainant never applied for reinstatement. In January 2009, the state supreme court disbarred the complainant after she failed to respond to additional allegations of misconduct, including her actions in the underlying case.

In January 2010, the respondent succeeded the magistrate judge. In July 2010, the district judge assigned the case to the respondent. In subsequent months, the respondent has ruled on various motions and conducted other matters in the federal case, including a hearing on November 4, 2010.

The federal case remains pending in both the district court and the Eighth Circuit Court of Appeals. In the district court, the defendants assigned their interest in the sanctions judgment to their law firm, which is attempting to collect the sanctions judgment from the complainant. As the assigned magistrate judge, the respondent is overseeing those efforts at the request of the district judge and regularly enters orders in the case. For example, the respondent recently denied the complainant's requests for the appointment of counsel and granted the law firm's motions to compel discovery from the complainant.

In February 2011, complainant represents that the Social Security Administration declared the complainant to be disabled and approved her application for SSI benefits. The complainant has chronic obstructive pulmonary disease (COPD), a physical malady that makes it difficult for her to breath and speak. The complainant claims she is in dire financial straits and moved to Texas to live with another person. The respondent has attempted to accommodate the complainant's COPD and alleged poverty by allowing the complainant to respond to motions in writing and

---

4. In her response to the judicial complaint, the respondent testified that, after drafting the initial sanctions order, she did not work on "any matters dealing with [the complainant], including any determination of the sanctions award ... until I became the assigned magistrate judge by order of [the district judge] on July 21, 2010." It is unclear whether the respondent's non-participation in the case for approximately four years resulted from disqualification by the magistrate judge.

permitting her to fax written correspondence directly to the court.

## II. ANALYSIS

The complainant correctly concedes that the merits of the respondent's rulings in the federal case may not be relitigated here. *See* 28 U.S.C. § 352(b)(1)(A)(ii); Judicial–Conduct and Judicial–Disability Proceedings of the Judicial Conference of the United States (J.C.U.S.) Rule 11(c)(1)(B). The complainant identifies three "subjects of complaint ... that [she] believe[s] are not 'merits related.'" The complainant alleges the respondent: (1) wrongly failed to recuse herself from the federal case; (2) "treat[ed] me with hostility and subject[ed] me to humiliating treatment" at a hearing on November 4, 2010; and (3) ignored a statement made by the defendants' attorney at the November 4, 2010 hearing that "[Complainant] should be in jail."

### A. Failure to Recuse

First, the complainant alleges the respondent should have recused herself from the federal case. The disputed issue is whether a reasonable person, who is informed of all the facts, would perceive a lack of impartiality on respondent's part because (1) immediately before assuming the bench, the respondent served as a law clerk for her predecessor; (2) while serving as a law clerk, the respondent worked on the same federal case in which she now presides and, among other things, drafted an order finding the complainant-attorney acted in bad faith in the prosecution of the same case, which later resulted in significant monetary sanctions against the complainant; (3) the complainant-attorney, who was later disbarred in part because of her actions in the case, accused the law clerk of ethical misconduct; and (4) the respondent, still a law clerk, testified against the complainant-attorney as a result of the complainant's accusation.

 This situation may well be unprecedented, and neither the complainant nor the respondent point to any authority as a guide. But I need not resolve the propriety of the respondent's failure to recuse, because such issue is merits-related. *See* J.C.U.S. Rule 3(h)(3) ("An allegation that calls into question the correctness of ... a failure to recuse, without more, is merits-related."). The complainant's proper remedy is to seek relief from the Eighth Circuit Court of Appeals.

The complainant also states, in conjunction with her argument that the respondent should have recused, that the respondent "clearly dislikes me personally and that her conduct toward me in the hearing was indicative of that and that she treated me in a demonstrably egregious manner." While this aspect of complaint is not merits-related, *see* Commentary on J.C.U.S. Rule 3 ("An allegation that a judge ruled against the complainant ... because the judge dislikes the complainant personally ... is ... not merits-related."), for the reasons set forth in Parts II.A and B below, I find this part of the complaint to be "frivolous [and] lacking sufficient evidence to raise an inference that misconduct has occurred." 28 U.S.C. § 352(b)(1)(A)(iii); *see* J.C.U.S. Rules 11(c)(1)(C) and (D).

### B. Allegations of "Hostility" and "Humiliating Treatment"

 Second, the complainant alleges the respondent "treat[ed] me with hostility and subject[ed] me to humiliating treatment" at a hearing on November 4, 2010. The complainant asserts the respondent took advantage of complainant's COPD by "repeatedly firing questions at me that I could not answer verbally," thereby "demonstrat[ing] hostility toward me and ab-

solute contempt for me personally and for my constitutional rights."

Having reviewed a complete transcript and listened to an audiotape of the November 4, 2010 hearing, the respondent's conduct at the hearing conclusively refutes complainant's allegations. The record plainly does not reflect complainant's contention that the district judge disparaged, attacked, ridiculed or otherwise treated complainant with hostility. Although the respondent occasionally interrupted the complainant, the interruptions appear to be the natural result of the inherent difficulty present in all telephone conversations. The respondent demonstrated an accommodating tone throughout the hearing, was patient, pleasant and judicious, and allowed the complainant time to respond to posed questions. This is a far cry from the sort of "deep-seated and unequivocal antagonism" that may constitute misconduct. *See Liteky v. United States*, 510 U.S. 540, 556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

The complainant's unsupported allegations of hostile and humiliating treatment are dismissed as "frivolous [and] lacking sufficient evidence to raise an inference that misconduct has occurred." 28 U.S.C. § 352(b)(1)(A)(iii); *see* J.C.U.S. Rules 11(c)(1)(C) and (D).

### C. "[Complainant] should be in Jail."

 Third, complainant asserts the respondent wrongly ignored the defendants' attorney's statement at the November 4, 2010 hearing that "[Complainant] should be in jail." From this failure to respond to the "outrageous" statement, which the complainant says violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692,

*et seq.*, complainant concludes the respondent is biased against her and tacitly acquiesced in the attorney's statement. The complainant attempts to contrast the sanctions order the respondent drafted for her predecessor sanctioning the complainant over $33,000 for violating a federal court rule, with respondent's allowing the attorney to violate a federal statute with impunity.

Contrary to the complainant's allegations, the defendants' attorney actually stated, "No one's suggesting [complainant] should be put in jail as a sanction." The complainant's allegations and attendant inferences of bias are, therefore, dismissed as "frivolous [and] lacking sufficient evidence to raise an inference that misconduct has occurred." 28 U.S.C. § 352(b)(1)(A)(iii); *see* J.C.U.S. Rules 11(c)(1)(C) and (D).

### III. CONCLUSION

The complaint is dismissed.